UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| LANA DEE EMERSON,<br><br>                Plaintiff,<br><br>      v.<br><br>CAROLYN W. COLVIN, Commissioner of Social Security,<br><br>                Defendant. | Case No. C13-1989-RSM-BAT<br><br>**REPORT AND RECOMMENDATION** |

Plaintiff Lana Dee Emerson appeals the denial of her Supplemental Security Income application. She contends the ALJ erred in assessing the medical opinion evidence. Dkt. 15. As discussed below, the Court recommends the case be **REVERSED** and **REMANDED** for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

## BACKGROUND

Following a hearing, the ALJ issued a decision finding Ms. Emerson not disabled. Utilizing the five-step disability evaluation process, 20 C.F.R. §§ 404.1520, 416.920, the ALJ found:

    **Step one:** Ms Emerson has not engaged in substantial gainful activity since September 24, 2010, the application date.

    **Step two:** Ms. Emerson's obesity, degenerative disc disease of the cervical spine,

REPORT AND RECOMMENDATION - 1

left shoulder impairment, posttraumatic stress disorder ("PTSD"), and major depressive disorder ("MDD") are severe.

**Step three:** These impairments do not meet or equal the requirements of a listed impairment. *See* 20 C.F.R. Part 404, Subpart P, Appendix 1.

**Residual Functional Capacity ("RFC"):** Ms. Emerson has the RFC to perform light work as defined in 20 C.F.R. § 416.967(b). She can occasionally climb ladders, ropes, scaffolds, ramps, or stairs. She can occasionally balance, stoop, kneel, crouch, and crawl. She must avoid concentrated exposure to extreme cold, vibration, and hazards. She can perform simple, routine, and repetitive tasks that do not involve manufacturing style production rate or pace work. She can have occasional interaction with co-workers and superficial interaction with the public defined as a passing hello or hotel maid responding to a guest request for a bar of soap. She can have occasional changes in the work setting.

**Step four:** Ms. Emerson is unable to perform any past relevant work.

**Step five:** Considering Ms. Emerson's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that she can perform. Therefore, she is not disabled.

Tr. 12-26. The Appeals Council denied Ms. Emerson's timely request for review, making the ALJ's decision the Commissioner's final decision. *See* 20 C.F.R. § 416.1481.

## DISCUSSION

Ms. Emerson challenges the ALJ's rejection of the medical opinions of Alyssa Ruddell, Ph.D.; Faulder Colby, Ph.D.; Beth Sandman, M.D., and Laurel Lum, B.A.; and James Pepka, M.D. These opinions are either from examining or non-examining doctors. Where contradicted by another physician, an examining doctor's opinion may not be rejected without "'specific and legitimate reasons' supported by substantial evidence in the record for so doing." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)). "The Commissioner may reject the opinion of a non-examining physician by reference to specific evidence in the medical record." *Sousa v. Callahan*, 143 F.3d 1240, 1244 (9th Cir. 1998).

REPORT AND RECOMMENDATION - 2

A.     Dr. Ruddell

In August 2010, Dr. Ruddell examined Ms. Emerson and assessed a global assessment of functioning ("GAF") score of 55, indicating moderate symptoms or moderate difficulty in school, occupational or social functioning.  Tr. 310.  She opined Ms. Emerson had marked limitations in her ability to understand, remember, and follow complex instructions; exercise judgment and make decisions; respond appropriately to and tolerate the pressures and expectations of a normal work setting; and maintain appropriate behavior in a work setting.  Tr. 311.  She also opined Ms. Emerson had moderate limitations in her ability to perform routine tasks, relate appropriately to coworkers and supervisors, interact appropriately with the public, and care for self including personal hygiene and appearance.  *Id.*

The ALJ gave Dr. Ruddell's opinion little weight for two reasons.  First, the ALJ found that the opinion was internally inconsistent because Dr. Ruddell opined Ms. Emerson had marked limitations in functioning but assessed a GAF score of 55, indicating moderate difficulty in functioning.  Tr. 22.  An ALJ may properly reject a doctor's report that is internally inconsistent.  *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 603 (9th Cir. 1999).  Ms. Emerson nevertheless contends the ALJ's finding is not supported by substantial evidence.  Specifically, she argues that Dr. Ruddell found her markedly impaired in only a few areas of functioning and found her less impaired in most areas of functioning, making the GAF score—which is a composite score that takes into account all aspects of functioning—consistent with the overall opinion.  Ms. Emerson also points out that the GAF scale "does not have a direct correlation to the severity requirements in [the Social Security] mental disorders listings . . . ," 65 Fed. Reg. 50, 746 at 50, 764-50, 765 (Aug. 2000), and therefore the absence of a direct correlation between a GAF score and workplace limitations is not an inconsistency.

REPORT AND RECOMMENDATION - 3

The Court finds that the ALJ's rejection of Dr. Ruddell's opinion based on internal inconsistencies is supported by substantial evidence. The GAF score of 55 indicates that Ms. Emerson had only moderate symptoms or moderate difficulties functioning. The GAF score is consistent with Dr. Ruddell's medical source statement:

> [Ms. Emerson] is able to reason concretely. She is able to understand. She is able to remember and learn. Ability to concentrate, persist and pace was limited on serial 3's. She reports distress and dissatisfaction in relationships. Ability to adapt to new situations and emotionally cope with change appears to be an area of dysfunction and is severe enough to adversely affect ability to function.

Tr. 311. Dr. Ruddell nevertheless opined Ms. Emerson's impairments cause marked limitations in four different areas of functioning, meaning that there was "very significant interference" with her ability to function in these areas. Neither the GAF score nor the medical source statement suggest the marked limitations Dr. Ruddell opined. Thus the ALJ reasonably found that Dr. Ruddell's opinion was internally inconsistent. Ms. Emerson's arguments otherwise merely present an alternative interpretation of the record, which is insufficient to establish error. *See Morgan*, 169 F.3d at 599 ("Where the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.") (citing *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995)); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (when evidence reasonably supports either confirming or reversing the ALJ's decision, the Court may not substitute its judgment for that of the ALJ). The Court also notes that Ms. Emerson's contention that the GAF scale does not have a direct correlation to the listings misses the mark; Dr. Ruddell assessed functional limitations, rather than opinions regarding whether Ms. Emerson met a listed impairment.

The ALJ also discounted Dr. Ruddell's opinion because it was inconsistent with the medical evidence. Tr. 22. Ms. Emerson contends this finding is not supported by substantial

REPORT AND RECOMMENDATION - 4

evidence. The Court, however, need not resolve this issue because any error would be harmless. *See Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008) (including an erroneous reason among other reasons is at most harmless error if the other reasons are supported by substantial evidence and the erroneous reason does not negate the validity of the overall determination). In sum, Ms. Emerson has not established harmful error in the ALJ's consideration of Dr. Ruddell's opinion.

**B.     Dr. Colby**

In August 2010, Dr. Colby reviewed Ms. Emerson's medical records and opined she met Listing 12.06. Tr. 307. In support of his opinion, Dr. Colby wrote:

> Jul 2009 report from Dr. Kenderdine diagnosed Major Depression without specifying DSM diagnostic criteria, and the expected duration was less than a year. His Feb 2010 report had similar problems and stayed with less than a year expected duration. Dr. Ruddell's Aug 2010 report diagnosed PTSD (death of husband) and Generalized Anxiety Disorder. These were reasonably well described. Depression still was there but in a differential with BAD and not clearly defined.

Tr. 307. The ALJ gave Dr. Colby's opinion little weight because it was "quite conclusory, providing very little explanation of the evidence relied on in forming that opinion." Tr. 22. The ALJ also found it was inconsistent with the record showing Ms. Emerson had no more than moderate limitations in "paragraph B" criteria. *Id.*; *see also* Tr. 16.

Ms. Emerson contends the ALJ's reasons for rejecting Dr. Colby's opinion are not supported by substantial evidence. She asserts that Dr. Colby clearly expressed the basis for his opinion, namely Dr. Ruddell's report. She also maintains that "the ALJ can only state [that Dr. Colby's opinion is inconsistent with the ALJ's "paragraph B" criteria findings] having rejected Dr. Ruddell's August 2010 opinions that Dr. Colby expressly relied upon to find that Listing 12.06 was met." Dkt. 15 at 5. According to Ms. Emerson, "If the Court finds that the ALJ

REPORT AND RECOMMENDATION - 5

improperly rejected Dr. Ruddell's medical opinions, then, it follows, that the ALJ also improperly rejected Dr. Colby's medical opinions." *Id.*

The Court concludes the ALJ properly rejected Dr. Colby's opinion as inconsistent with the record related to the "paragraph B" criteria. *See Sousa*, 143 F.3d at 1244 ("The Commissioner may reject the opinion of a non-examining physician by reference to specific evidence in the medical record."). The ALJ provided a thorough discussion of the "paragraph B" criteria, finding that Ms. Emerson had mild restriction in activities of daily living, moderate difficulties in social functioning, and moderate difficulties with regard to concentration, persistence, or pace. Tr. 16. These findings are supported by substantial evidence. Ms. Emerson argues otherwise, as noted above, but she relies entirely on the assertion that the ALJ wrongly rejected Dr. Ruddell's opinion. Because the Court has determined the ALJ properly rejected Dr. Ruddell's opinion, Ms. Emerson's argument is unavailing. Ms. Emerson fails to establish harmful error in the ALJ's consideration of Dr. Colby's opinion.

C.   **Dr. Sandman and Ms. Lum**

In November 2011, Dr. Sandman reviewed and adopted a report by Ms. Lum, an examining clinical psychology intern. Tr. 703. Ms. Lum's report states in relevant part:

> [Ms. Emerson] reports she no longer wants to do anything since her husband's death in 2007. After husband's murder, clt began experiencing panic attacks, had no interest in daily and outside activities, daily suicidal ideation but no plan, daily nightmares, wakes up in cold sweat from nightmares, disturbed sleep and appetite since husband's death, either does not eat or overeats; has panic attacks often in public, esp around crowds and new situations. If building is crowded she will not go in, has difficulty leaving house; since death of husband has had difficulty concentrating, hypervigilant, has difficulty learning new job skills, functioning level is so low would be nearly impossible to maintain a fixed, regular schedule with any consistency. Clt has racing thoughts, unable to focus and concentrate, mood lability. . . .
>
> Clt reports some days she can barely get out of bed, clt stays in bed and watches tv, has no interest in daily and outside activities, has suicidal ideation but no plan;

        has difficulty engaging in normal self care activities, such as preparing meals, showering, keeping gas in the car, paying bills, being motivated to take care of personal business, unable to problem solve daily living tasks.

Tr. 702.  On mental status exam, Ms. Lum noted Ms. Emerson's general appearance was appropriate but she needs help with grooming, she was cooperative and fully oriented, her mood was depressed and helpless, she was teary eyed, her affect was restricted, her thought content included constant worry about past and future problems with difficulty problem solving, she reported difficulty absorbing information and that her mind races, her memory was fair, she has a good educational background but difficulty accessing information she once knew, her concentration was poor, she has some ability to think abstractly but no energy to put into understanding abstract concepts, her insight was fair, and her judgment was poor.  Tr. 703-04.  Ms. Lum assessed a GAF score of 41[1] and opined Ms. Emerson is unable to work because of her symptoms, which severely limit her ability to perform everyday activities and maintain daily commitments.  Tr. 702.

        The ALJ gave Ms. Lum's opinion little weight because it was inconsistent with the medical evidence showing Ms. Emerson "generally did well on memory and concentration tasks (Exs. 6F; 20F), and was alert and oriented, had logical thought process, intact memory, an appropriate affect, had good eye contact, normal speech, and was pleasant and cooperative (Exs. 6F; 7F; 9F; 17F; 21F)."[2]  Tr. 23-24.

---

[1] A GAF of 41-50 denotes "[s]erious symptoms (e.g. suicidal ideation, severe obsessional rituals, frequent shoplifting), OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)."  Diagnostic & Statistical Manual of Mental Disorders 32 (4th ed. 2000).

[2] The ALJ also noted that Ms. Lum was an intern, and therefore her opinion did not qualify as a medical opinion from an acceptable medical source.  Tr. 24.  Because Dr. Sandman adopted Ms. Lum's opinions, this finding is erroneous.  *See Lee v. Colvin*, No. C12-5835BHS, 2013 WL 4757267, at *4 (W.D. Wash. Sept. 4, 2013).

REPORT AND RECOMMENDATION - 7

Ms. Emerson asserts the ALJ's reason is not supported by substantial evidence. Because the evidence cited by the ALJ is not inconsistent with Ms. Lum's opinion in any meaningful way, the Court agrees. As Ms. Emerson argues, whether she generally did well on memory and concentration tasks and had intact memory is not particularly germane to Ms. Lum's opinion that she was unable to perform activities of daily living and maintain daily commitments. Furthermore, whether Ms. Emerson presented as alert and oriented, pleasant, and cooperative during other examinations is not inconsistent with Ms. Lum's opinion, and whether she had logical though process, good eye contact, and normal speech during other examinations is irrelevant to her ability to perform daily activities or maintain commitments. Finally, there is no dispute that Ms. Emerson has major depressive disorder, thus it was inappropriate for the ALJ to discount Ms. Lum's opinion because Ms. Emerson presented as depressed, tearful, and with a restricted affect during the examination but presented with an appropriate affect on other occasions.

The Commissioner's arguments to the contrary are not persuasive. The Commissioner asserts that contrary to Ms. Lum's statement that Ms. Emerson struggled to perform self-care, such as showering, Ms. Emerson routinely presented as well-groomed and neatly dressed. *See* Tr. 647-72, 700, 732. The ALJ, however, did not cite Ms. Emerson's grooming as a reason for discounting Ms. Lum's opinion. *See*, *e.g.*, *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) (district court erred in affirming based on evidence the ALJ did not discuss). The Commissioner also argues, "Contrary to Ms. Lum's assessment that Plaintiff struggled with concentration, learning new tasks, and had limited ability to problem solve, Tr. 702, Dr. Kenderdine noted that Plaintiff was able to learn new tasks and had 'satisfactory' problem-solving skills, with no limitation in performing routine tasks. Tr. 698-99." Dkt. 16 at 12. The

REPORT AND RECOMMENDATION - 8

problem with this argument is it is not apparent that Ms. Lum's opinion regarding Ms. Emerson's impaired ability to perform everyday activities and maintain daily commitments is based on Ms. Emerson's reported difficulties with concentration, learning new tasks, and problem solving.  Furthermore, because the ALJ did not discount Ms. Lum's opinion as inconsistent Dr. Kenderdine's opinion that Ms. Emerson could learn new tasks and solve problems, the Court declines to affirm the ALJ on this ground.  *See Connett*, 340 F.3d at 874.

In sum, the ALJ failed to provide specific and legitimate reasons, supported by substantial evidence, to discount Ms. Lum's and Dr. Sandman's opinion.  As they opined Ms. Emerson was more limited than the ALJ found, the ALJ's error was harmful, and remand for reconsideration of Ms. Lum and Dr. Sandman's opinion is appropriate.

**D.      Dr. Pepka**

Dr. Pepka examined Ms. Emerson in January 2011 and provided an assessment of her physical functioning. Tr. 535-44.  He opined in relevant part that plaintiff's ability to sit was not restricted, she could stand and walk occasionally, and she could lift one pound frequently, two pounds occasionally, 15 pounds seldom, and 25 pounds never.  Tr. 541-42.  The ALJ gave Dr. Pepka's opinion some weight but rejected the doctor's opinion regarding Ms. Emerson's lifting limitations because it was inconsistent with her daily activities and with the medical evidence showing she had no joint stiffness, swelling or tenderness, no muscle weakness, and normal muscle bulk, tone, and strength.  Tr. 22.

In her opening brief, Ms. Emerson contends the ALJ's finding that the lifting limitations are inconsistent with the medical evidence is not supported by substantial evidence.  She wholly fails to address, however, the ALJ's finding that the lifting limitations are inconsistent with her reported activities.  *See Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001) (affirming an

ALJ's rejection of a treating physician's opinion that was inconsistent with the claimant's level of activity). This finding is supported by substantial evidence. For example, as the ALJ found, Ms. Emerson's ability to care for and feed horses, goats, and chickens is inconsistent with Dr. Pepka's opinion that she could lift only one pound frequently, two pounds occasionally, 15 pounds seldom, and 25 pounds never. *See* Tr. 21, 53-57. Ms. Emerson also testified that she would move bales of hay. Tr. 53. In reply to the Commissioner's argument on this issue, Ms. Emerson contends that her foster sons helped with the animals. *See* Tr. 56-57. Even so, the fact that Ms. Emerson had help does not negate the evidence supporting the ALJ's finding that in caring for her animals, Ms. Emerson lifted more weight than Dr. Pepka opined she could. Because the ALJ reasonably discounted Dr. Pepka's lifting limitations as inconsistent with Ms. Emerson's activities, any error in the ALJ's reliance on the medical evidence was harmless. *See Carmickle*, 533 F.3d at 1162.

The Commissioner, however, concedes Ms. Emerson's argument that the ALJ erred by failing to either reject Dr. Pepka's opinion that she is limited to standing and walking occasionally or incorporate this limitation into the RFC. *See* SSR 96-8p ("If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted."). The Commissioner argues this error was harmless, but because this matter is being remanded for reconsideration of Ms. Lum and Dr. Sandman's opinion, the ALJ on remand should also reconsider Dr. Pepka's opinion that Ms. Emerson can stand and walk occasionally.

## CONCLUSION

For the foregoing reasons, the Court recommends that the Commissioner's decision be **REVERSED** and the case be **REMANDED** for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

On remand, the ALJ should reevaluate Ms. Lum's and Dr. Sandman's opinion and Dr. Pepka's opinion regarding Ms. Emerson's standing and walking limitations.  As appropriate, the ALJ should develop the record, revise Ms. Emerson's RFC, and proceed with steps four and five of the sequential evaluation process.

A proposed order accompanies this Report and Recommendation.  Objections, if any, to this Report and Recommendation must be filed and served no later than **June 10, 2014.**  If no objections are filed, the matter will be ready for the Court's consideration on **June 13, 2014**.  If objections are filed, any response is due within 14 days after being served with the objections.  A party filing an objection must note the matter for the Court's consideration 14 days from the date the objection is filed and served.  Objections and responses shall not exceed twelve pages.  The failure to timely object may affect the right to appeal.

DATED this 27th day of May, 2014.

_____
BRIAN A. TSUCHIDA
United States Magistrate Judge

REPORT AND RECOMMENDATION - 11